ERNEST E. DUPRE *et als. vs.* PAUL ST. JACQUES *et als.*

JANUARY 23, 1931.

PRESENT: Stearns, C. J., Rathbun, Sweeney, and Murdock, JJ.

SWEENEY, J. The finding that neither the respondents nor the petitioners are entitled to the offices of alderman and common councilmen from the Fifth Ward in the City of Woonsocket as a result of the election held in said ward November 4, 1930, as stated in our rescript filed January 13, 1931, is based upon the law and facts as follows.

The right to vote at a caucus or nominate candidates for a civil office is not a contract right guaranteed by the constitution, but rather a private privilege granted by the legislature under its general power to regulate elections. *Opinion to the Governor*, 43 R. I. 421, 424, 9 R. C. L. 1064, 1078.

The General Assembly, acting within its powers, enacted Chapter 11, G. L. 1923, entitled "Of Elections by Secret Ballot." This chapter provides for the nomination and election of candidates for certain civil offices. The nomination and election of aldermen and councilmen in the city of Woonsocket are subject to the provisions of this chapter.

It is undisputed that the petitioners, Ernest E. Dupre, Valmore A. Belanger and Emile A. Pepin were duly nominated as candidates for the offices of alderman and councilmen from said ward by the Republican and the Democratic caucuses to be voted for at the election to be held November 4, 1930, and that the certificates of their nominations were duly made and filed with the board of canvassers and registration of said city, and that their names were lawfully printed upon the official ballot.

Section 13 of said chapter authorizes the nomination of candidates for said offices by nomination-papers. It provides that such nomination-papers shall be signed in the aggregate for each candidate by not less than 50 voters qualified to vote for each such candidate. Each voter is required to add to his signature his place of residence, Sec. 14.

A nomination-paper was filed with said board of canvassers and registration nominating respondents St. Jacques, Farley and Picard for said offices of alderman and councilmen. This paper was filed after three o'clock, October 20, the last day upon which nomination-papers could be filed within the time fixed by Sec. 17 of said chapter. The clerk of the board and his assistant then examined the signatures on the nomination-paper and the clerk told the gentleman who filed the paper that of the 68 signatures on the paper he thought 56 were names of voters qualified to sign such nomination-paper. Saturday afternoon, November 1, the board examined the signatures on the nomination-paper and found that 52 were names of voters qualified to sign such nomination-paper. The board caused the names of these candidates to be printed on the official ballot. At the election held November 4, these petitioners, Dupre, Belanger and Pepin, the candidates of the Republican and the Democratic caucuses, received 1469, 1554, 1608 votes respectively, and respondents, St. Jacques, Farley and Picard, nomination-paper candidates, received 1,843, 1,619, 1,631 votes respectively and were declared elected by said board. The respondents took their oath of office January 4, 1931. Thereafter, on the same day, petitioners filed their petition to test respondents' titles to said offices.

Petitioners alleged that respondents cannot hold said offices because they were not duly nominated therefor as only 37 qualified voters signed their nomination-paper. Respondents claimed that 52 qualified voters signed their nomination-paper and that they were lawfully nominated. At the trial it was admitted that 10 of the 68 signers of the nomination-paper were disqualified. Petitioners claimed that 19 of the remaining 58 signers were disqualified. Testimony was produced to support the claims of the petitioners and respondents relative to each of these names. Ten of these signers were proved to be disqualified. It was proved that four of these signers, Claudia Martin, Victoria Langlois, Arthur Destrampes and Cesira Bonollo were not

eligible to sign the nomination-paper because they had voted at a Democratic or Republican caucus within 26 months, Sec. 6, Chap. 1515, P. L. 1930. One of the signers, Tomba, was not on the voting list; another, Pellerin, lived in the Fourth Ward; another, Jean, had moved out of the State and three others, P. Lee Bridges, Mrs. C. V. Fonteyne and Eva Rondeau, had not signed their names as they appeared on the voting lists. The names as they appeared on the voting lists are "Plato Lee Bridges," "Clemence V. Fonteyne," and "M. Eva Rondeau." It is necessary to hold these last three names invalid because this court held in the case of *Attorney General* v. *Clarke*, 26 R. I. 470, that the voter's name as it appears on the voting list "is the standard by which the signatures to nomination papers are to be tested. This obviously excludes abbreviations and initials, unless they appear on the voting list." This decision was followed in *Stone* v. *Waterman*, 70 Atl. 1009.

The law provides that a person desiring to vote may register his name in the registry book, Sec. 15, Chap. 7, G. L. 1923, and that the board of canvassers shall make out correct alphabetical lists of all persons qualified to vote and the residence of each person thereon by street and number, so far as the same can be ascertained and described from the registry book and from such other evidence as the board may require in the case of any name on such list. Sec. 2, Chap. 8, G. L. 1923. No person can vote unless his name is upon the list of voters and the voter is required to announce his name before he can vote. Secs. 3, 5, 6, Chap. 10, G. L. 1923; Sec. 41, Chap. 11, G. L. 1923. This law is mandatory. *Bryer* v. *Sevigney*, 42 R. I. 187.

It is generally known that it is necessary for voters signing nomination-papers to sign their names as they appear on the voting list. This was known to one of the gentlemen who asked voters to sign the nomination-paper for respondents. Noel Blais testified that he asked Helena Boisseau to sign the nomination-paper and after she had written her name Helen, he asked her to add the letter

"a" so as to make it "Helena" in order to have it conform to her name on the voting list. If a person writes his name in the registry book, and it appears on the voting list the same as it is written in the registry book, it is not unreasonable to require him to write it the same when he signs as a voter on a nomination-paper.

The express statutory provision that the nomination-paper under consideration shall be signed by not less than 50 voters qualified to vote for such candidates is mandatory and cannot be ignored or nullified by any action by the board of canvassers. Unless the nomination-paper is duly signed by the required number of voters the candidates named on the nomination-paper are not duly nominated and their names cannot be printed upon the official ballot, for Section 23, Chapter 11, General Laws, 1923, says: "Every ballot . . . shall contain the names of all candidates whose nominations for any offices specified in the ballot have been duly made . . . and shall contain no other names . . . ." If the board of canvassers and registration had performed their duty by refusing to place the names of the respondents on the official ballot because their nomination-paper was not signed by the required number of qualified voters, such action would be sustained by this court. *Atty. Gen.* v. *Clarke, supra; Stone* v. *Waterman, supra; Como* v. *Sprague, Secretary of State,* 46 R. I. 235.

Respondents contend that petitioners cannot raise the question of the invalidity of the nomination-paper after the election and cite the case of *Sisson, Atty. Gen. et als.* v. *Lisle et als.,* 48 R. I. 281, in support of their contention. In that case it appeared that neither the relators nor the respondents filed their certificate of nominations as required by statute. The town clerk, disregarding the irregularities in both certificates, caused the names of all candidates on both certificates to be printed upon the official ballot. Neither party objected to the placing of the names of all candidates upon the ballot until the day after the election. The town clerk acted fairly and in good faith in placing the

names of all candidates upon the official ballot. It was presumed that he caused to be conspicuously posted in each voting district, at least four days previous to the date of the election, specimen ballots containing the names of all the candidates to be voted for at the election. It was held that the relators had ample opportunity to ascertain that the names of the respondents would be on the official ballot and to object thereto before the election, and consequently were not permitted to complain of the failure of the respondents to file their certificate of nomination as required by law.

In the present case petitioners were deprived of the opportunity of inspecting the nomination-paper or knowing whether the board of canvassers and registration would place the names of respondents upon the official ballot until it was too late to prevent the printing of their names on the official ballot.

Petitioners had the absolute right to inspect the nomination-paper after it was filed for the statute provides that all nomination-papers, when filed, shall be open, under proper regulations, to public inspection, Sec. 21, Chap. 11, G. L. 1923. The board ignored this statute and refused to permit any person to inspect respondents' nomination-paper from the time it was filed, October 20, until Saturday morning, November 1, when the Mayor of the city was permitted to make a copy of it for the petitioner Mr. Dupre. After the nomination-paper was filed, Mr. Dupre repeatedly requested the clerk of the board for an opportunity to inspect the paper and was refused. The clerk testified that he was asked by Mr. Dupre, and two other candidates, for certified copies of the nomination-paper and that he refused to let them have the copies; that Mayor Paquin asked for a certified copy of the nomination-paper Saturday, November 1, and he was permitted to make a copy of it.

The clerk further testified that Mr. Dupre "was claiming right along" that the nomination-paper did not contain 50 valid names; that he agreed to give him an opportunity

Saturday afternoon, November 1, to show that there were not 50 valid names on the paper; that Saturday afternoon the board was in executive session and checked the names on the nomination-paper and found 52 valid signatures and decided to place the names of the respondents on the official ballot and refused to give Mr. Dupre an opportunity to show that some of the names were invalid.

The clerk admitted that he received a letter from Mr. Dupre dated November 3, in which he stated that he objected to the validity of the names on the nomination-paper and protested against the names of respondents being placed upon the official ballot. He also admitted that the board did not post the specimen ballot of candidates as required by law. It conclusively appears that the board did not finally decide to place respondents' names on the official ballot until Saturday afternoon, November 1. The following Monday morning Mr. Dupre's attorney appeared before this court with a petition praying for an injunction to restrain the board from placing the names of the respondents upon the official ballot. As the general election for National, State and City officials was to be held the next day the court refused to receive the petition on account of insufficient time within which to notify the members of the board and the respondents of the filing of the petition, have a hearing thereon and render a decision before the election.

It thus appears that the petitioners sought by every reasonable means to inspect the signatures on the nomination-paper and were prevented from inspecting them by the misconduct of the clerk of the board of canvassers and registration; and that as soon as possible after petitioners learned that the board had decided to place the names of the respondents on the official ballot petitioners sought to enjoin their unlawful action. For these reasons the case of *Sisson, Atty. Gen. et als.* v. *Lisle et als, supra,* does not apply to the facts in this case.

Section 23, Chapter 11, General Laws, 1923, provides that every ballot . . . "shall contain the names of all

candidates whose nominations for any offices specified in the ballot have been duly made . . . and shall contain no other names . . . ." This statute is mandatory and cannot be changed or modified by the court. By the clear and express words of this statute the respondents' names were forbidden to be placed on the official ballot, as they were not duly nominated for the offices specified in the ballot. If the petitioners had had the time and opportunity to have filed their petition in court and had a hearing thereon before election the respondents' names would have been ordered stricken from the ballot. Petitioners have acted with due diligence and are entitled to be placed in the same legal position that they would have been in if their petition for an injunction to restrain the placing of respondents' names on the ballot had been heard and decided the day before the election. To place petitioners in this position it is necessary to have a new election.

We agree with the respondents' contention that the petitioners cannot be declared elected as the result of the election held November 4, because they did not receive a plurality of the votes. The voters in the Fifth Ward were not responsible in any way for the unlawful placing of the names of the respondents upon the official ballot.

Undoubtedly the voters believed they were voting for candidates whose names were lawfully upon the ballot. In these circumstances this case comes within the rule announced in *Sanders* v. *Rice, Atty. Gen.*, 41 R. I. 127, wherein it was held that a person receiving a minority of the votes cast could not be declared elected. See also *Gill* v. *Mayor, etc., of Pawtucket*, 18 R. I. 281; *In re Corliss*, 11 R. I. 638.

Our conclusion that there must be a new election for the offices of alderman and councilmen is inevitable under the law and the facts. The law authorizing the nomination of candidates by nomination-papers is clear and explicit. A substantial compliance with its terms is easy and necessary. Respondents were at fault in not having their nomination-

paper duly signed by not less than 50 qualified voters. The action of the board in refusing petitioners the opportunity of inspecting respondents' nomination-paper was a flagrant violation of the law. By the misconduct of the board in not making their decision to print the names of respondents upon the official ballot until it was too late for petitioners to have the validity of the nomination-paper decided by this court, before the election, petitioners were deprived of substantial rights. For the nonperformance of their duties relative to the nomination-paper, the board is open to censure. The inconvenience and expense which the voters of the Fifth Ward and the City may be put to on account of the new election, and the delay incident thereto, are properly attributable to the misconduct of the board.

Before filing our rescript and entering a decree ordering a new election for alderman and councilmen to be held in said Fifth Ward on the 27th day of January, 1931, we heard the attorneys for the parties, and they made no objection to said date.

Inasmuch as this petition has been disposed of by our rescript and decree entered January 13, 1931, no further order or decree is now required.